NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-920

MICHAEL GALLAGHER'S CASE

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The appellant, city of Boston, appeals from a summary disposition of the reviewing board (board) of the Department of Industrial Accidents (DIA) affirming a DIA administrative judge's decision ordering the city to pay the appellee (Gallagher) ongoing benefits pursuant to G. L. c. 152.  The sole contention on appeal is that the board's summary affirmance of the administrative judge's decision was arbitrary, capricious, contrary to law, or an abuse of discretion because it was based on legally insufficient medical opinion evidence.  We affirm.

Background.  We briefly summarize the facts found by the administrative judge.  See Carpenter's Case, 456 Mass. 436, 438 (2010).  Gallagher worked as an emergency medical technician (EMT) and certified paramedic for the city.  On August 18, 2019, he "injured his back lifting a patient," and experienced mid to

low back pain and numbness associated with radiation down the left leg.  He subsequently returned to work, and on February 20, 2021, "sustained further tragic injuries to his lumbar spine, responding to a call for cardiac arrest."[1]  As a result of this accident, he did not return to work.[2]  He reported the injury to the city, which began paying for medical treatment and weekly disability benefits effective February 20, 2021.

Following the injury, Gallagher had a transforaminal epidural steroid injection at the left L4-5 level. Approximately one week later, he experienced functional problems including left leg numbness and weakness, difficulty walking and ascending stairs, development of "foot drop," and "numerous falls with worsening symptoms that progressed to left side saddle anesthesia, right thigh/buttocks numbness and culminated in urinary and fecal incontinence."

Around August of 2021, health care providers began noting that Gallagher might have "cauda equina syndrome."  Gallagher continued to experience "functional decline" as detailed in his medical records.  In 2022, Gallagher had a biopsy that revealed a rare type of cancer known as intravascular lymphoma.

---

[1] While lifting a patient for transport, Gallagher "felt a pop in his back with immediate intense pain down his left leg."

[2] The parties stipulated that Gallagher sustained an industrial injury.

Gallagher now requires the use of a wheelchair and ongoing medical treatment and care "for his now permanent, severe neurological deficits."

In or around May of 2022, the city filed a complaint for discontinuance of benefits, contending that any ongoing disability was no longer related to the industrial injury. That request was denied by the administrative judge and the city appealed.

On February 7, 2023, an orthopedic surgeon assigned by the DIA as an impartial medical examiner (IME) examined Gallagher and reported his findings pursuant to G. L. c. 152, § 11A. The IME opined, inter alia, that the work injury of February 20, 2021, "is a major cause of [Gallagher's] lumbar back and cauda equina condition"; that Gallagher's work injury is a major cause of his ongoing physical incapacity; that Gallagher's medical history and condition is complex; that in his forty years of practice, the IME had never seen a case where cauda equina was caused by lymphoma; and that Gallagher is "permanently and totally disabled from his job as a paramedic." The administrative judge allowed the city's motion to submit additional medical evidence to address the complex medical issues presented in the case.

On September 21, 2023, an evidentiary hearing on the city's request to discontinue and on Gallagher's claims for incapacity

3

benefits under G. L. c. 152, §§ 13, 30, 34, 34A, 35, and 36 was held before the administrative judge. The transcript of the deposition of the IME, conducted on October 24, 2023, was admitted into the hearing record. On November 1, 2024, the administrative judge issued a comprehensive written decision wherein she denied the city's request to modify or discontinue benefits and ordered the city to pay (or continue to pay) Gallagher disability benefits under G. L. c. 152, §§ 13, 30, 34, and 34A.

The city appealed the hearing decision to the board, which affirmed the administrative judge's decision in a summary disposition. The city now appeals therefrom.

Discussion. The city contends that the administrative judge's reliance on the IME's opinion constituted reversible error because the IME's opinions are self-contradictory, predicated on incorrect, confusing, and unsupported facts, lacking in medical expertise, and not stated to a reasonable degree of medical certainty. We are not persuaded.

In cases of summary affirmance of a decision of the administrative judge by the board, we examine the findings and reasoning of the administrative judge. See Ballard's Case, 13 Mass. App. Ct. 1068, 1068 (1982). "Pursuant to G. L. c. 152, § 12 (2), we review a decision of the board under the standards of the Administrative Procedure Act, G. L. c. 30A, § 14 (7) (a)-

4

(d) and (f)-(g)." Dalbec's Case, 69 Mass. App. Ct. 306, 312 (2007). "Review is deferential," and we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it" (citation omitted). Whitman's Case, 80 Mass. App. Ct. 348, 352 (2011).

Here, there is no merit to the city's claim that the IME's causation opinions were not stated to a reasonable degree of medical certainty. Contrary to this claim, the IME wrote in his report as follows:

> "it is my professional opinion, to a reasonable degree of medical certainty that causally related to the industrial injury of 02/20/21, Mr. Gallagher sustained an acute injury at L4-5 resulting in a broad based disc protrusion with subsequent acute onset of back pain and left lumbar radiculopathy in the presence of non-Hodgkin's lymphoma."

He further opined that the "lifting incident did occur in the presence of probable preexisting lymphoma. However, that lifting injury significantly worsened the back and left leg symptoms." He also stated, "In my opinion, the industrial incident of 02/20/2021 was a major, but not necessarily predominant cause of his onset of back and left leg symptoms, as well as results of cauda equina syndrome." To avoid any confusion, he repeated that "[a]ll my opinions are stated to within a reasonable degree of medical certainty." Thus, this aspect of the city's argument fails.

5

We are likewise unpersuaded by the city's argument that the IME's opinions were not stated to a reasonable degree of medical certainty because he used equivocal phrases like "may have" and "in some way" at his deposition. The information elicited by the city through deposition examination of the IME may have demonstrated potential inconsistencies in the IME's testimony but did not render those opinions inadequate as a matter of law or fact. Rather, the administrative judge was free to "accept such portions of [the IME's] testimony as [she] thought credible," as that finding was supported by the evidence. Luczek's Case, 335 Mass. 675, 678 (1957) (even assuming inconsistent statements in doctor's testimony this was "the ordinary instance where the trier of fact is presented with the duty of believing such portions of the evidence as he deems credible").

For similar reasons, we also reject the city's argument that the IME's opinions were self-contradictory, and predicated on incorrect, confusing, and unsupported facts. Here again, to the extent that there was conflicting evidence and conflicting expert opinions proffered by the parties, it was for the fact-finder -- here the administrative judge -- to sort through this evidence and make factual determinations. See Luczek's Case, 335 Mass. at 678; Ruane v. Doyle, 308 Mass. 418, 422 (1941). In this regard, it is critical that the IME opined that Gallagher's

6

work injury was "a major, but not necessarily predominant cause of his onset of back and left leg symptoms."  This is consistent with G. L. c. 152, § 11A, which requires the IME to determine, inter alia, "whether or not within a reasonable degree of medical certainty any such disability has as its major or predominant contributing cause a personal injury arising out of and in the course of the employee's employment."  The administrative judge adopted this portion of the IME's opinions, and the evidence, including but not limited to the IME's report and the detailed medical records, supports her determination.[3]

We note that both before the administrative judge and on appeal, the city makes a comprehensive and skillful argument that the work-related incident was not the cause of Gallagher's symptoms.  Indeed, this argument was supported, in part, by the opinions of the experts hired by the city to review Gallager's medical records.[4]  But the question before us is not what

---

[3] The city's argument that the IME lacked relevant medical expertise is also unavailing.  The IME's background, knowledge, familiarity with back surgeries and oncological issues, and breadth of relevant medical experience provided him with a sufficient background and basis to evaluate Gallagher's injuries and offer his opinions regarding the causes related thereto.

[4] The city offered the reports of (1) an anesthesiologist who opined that the work-related injury of February 20, 2021, was not the cause of Gallagher's symptoms, and (2) a hematologist and oncologist who opined that Gallagher "had an injury which resulted in some of the paraparesis, but the cauda equina syndrome was due to the evolving intravascular large B-cell lymphoma."

conclusion we would reach had the case been presented to us in the first instance. Rather, the question before is "whether there is any evidence, including all rational inferences of which the evidence is susceptible, upon which the findings of the board could have been made, and if there is such evidence we do not disturb the findings unless they are vitiated by some error of law." Buck's Case, 342 Mass. 766, 770-771 (1961). Here, the administrative judge was not obligated to credit the city's divergent views, and there is nothing in the record before us that compels a finding -- legally or factually -- that the IME's opinion was inadequate or unsupported by the record. See Clarici's Case, 340 Mass. 495, 497 (1960) ("It is a well established rule that this court must sustain the findings of the reviewing board unless they are wholly lacking in evidential support or are tainted by error of law"). We recognize that the present case involves complex medical issues and claims, and that there is a degree of persuasiveness to the city's claim that the predominant cause of Gallagher's injury may have stemmed from causes other than his work-related injury. Nevertheless, the city has failed to demonstrate that the IME's opinion, that the work-related injury was a "major cause" of Gallagher's ongoing physical incapacity, is unsupported by the evidence. G. L. c. 152, § 11A.

Conclusion.  The decision of the reviewing board is affirmed.

So ordered.

By the Court (Massing,
  Neyman & Smyth, JJ.[5]),

Clerk

Entered:  July 24, 2026.

---

[5] The panelists are listed in order of seniority.